# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

| | |
|---|---|
| Christine Thomsen, Donna Miller, Shelbi Farrington, Dianna Kometh, Sally Labree, Harry Peterson, Patrick Burnham, David Teverbaugh, Richard Journagin, Gale Marie Jackson, Edward Cable, Carole Dangelo, Sophia Marks, Albert Shearer, and Rebecca Younk, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>Morley Companies, Inc.<br><br>    Defendant. | Case No. 1:22-cv-10271-TLL-PTM<br>Hon. Thomas L. Ludington<br>Hon. Patricia T. Morris |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Christine Thomsen, Donna Miller, Shelbi Farrington, Dianna Kometh, Sally LaBree, Harry Peterson, Patrick Burnham, David Teverbaugh, Richard Journagin, Gale Marie Jackson, Edward Cable, Carole Dangelo, Sophia Marks, Albert Shearer, and Rebecca Younk (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, move this Court, pursuant to Federal Rule of Civil Procedure 23, for an Order granting preliminary approval of the proposed class action Settlement Agreement ("S.A.") agreed to by the Parties. *See* Settlement Agreement attached as **Exhibit 1**. The Motion[1] seeks preliminary approval of the Plaintiffs' agreement with Defendant to settle all individual and class claims that were made, or could have, been made, in Plaintiffs' Second Amended Class Action Complaint (ECF No. 18).

In support of this motion, Plaintiffs rely upon the accompanying Memorandum of Law, the Declaration of Bryan L. Bleichner, and the Declaration of Epiq Class Action & Claims Solutions, Inc. and/or its affiliate Hilsoft Notifications in Support of Plaintiffs' Unopposed Motion for Preliminary Approval, which presents the Class Action Settlement with all supporting documentation.

Plaintiffs request that the Court enter an order[2]:

1.  Provisionally certifying the Settlement Class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3);

---

[1] Filed with leave from the Court, *see* ECF No. 25, PageID.1658-1659.
[2] Plaintiffs have attached a Proposed Order to Plaintiffs' papers, **Ex. 5**.

2.  Provisionally appointing Plaintiffs as representatives of the Settlement Class;

3.  Finding that the proposed Settlement is sufficiently fair, reasonable, and adequate to allow dissemination of notice of the settlement to the proposed Settlement Class;

4.  Appointing Bryan L. Bleichner of Chestnut Cambronne PA as Settlement Class Counsel;

5.  Establishing dates for a hearing on final approval of the proposed Settlement, Plaintiffs' service awards and Class Counsel's request for attorneys' fees and expenses;

6.  Appointing Epiq Class Action & Claims Solutions, Inc. and/or its affiliate Hilsoft Notifications (together, "Epiq") as Claims Administrator;

7.  Approving the form of class notice;

8.  Approving the notice plan and directing that notice be given;

9.  Establishing a deadline for filing papers in support of final approval of the proposed Settlement and a request for attorneys' fees, expenses, and service awards;

10. Establishing a deadline for the filing of objections by Settlement Class Members; and

11. Establishing a deadline for Settlement Class Members to exclude themselves from the proposed Settlement Class with respect to the settlement.


Respectfully Submitted:

September 5, 2022    **THE MILLER LAW FIRM, P.C.**

By: */s/ Sharon S. Almonrode*
Sharon S. Almonrode (P33938)
ssa@millerlawpc.com
E. Powell Miller (P39487)
epm@millerlawpc.com
950 West University Drive

Rochester, MI 48307
Telephone: (248) 841-2200

Bryan L. Bleichner
bbleichner@chestnutcambronne.com
Jeffrey D. Bores
jbores@chestnutcambronne.com
Christopher P. Renz
crenz@chestnutcambronne.com
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South,
Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300

Nathan D. Prosser
nprosser@hjlawfirm.com
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005

Gary M. Klinger
gklinger@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (202) 429-2290

David K. Lietz
dlietz@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5101 Wisconsin Ave. NW, Suite 305
Washington, D.C. 20016
Telephone: (202) 429-2290

Rachele R. Byrd

byrd@whafh.com
Oana Constantin
constantin@whafh.com
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599

M. Anderson Berry
aberry@justice4you.com
Gregory Haroutunian
gharoutunian@justice4you.com
**CLAYEO C. ARNOLD,
PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778

Charles R. Ash, IV (P73877)
crash@nationalwagelaw.com
**NATIONAL WAGE AND HOUR
LAW, ASH PLLC**
402 W. Liberty St.
Ann Arbor, MI 48103-4388
Telephone: (734) 234-5583

Terence R. Coates
tcoates@msdlegal.com
**MARKOVITS, STOCK &
DEMARCO, LLC**
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
119 E. Court St., Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700

Joseph M. Lyon
jlyon@thelyonfirm.com
**THE LYON FIRM**

2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333

Jean S. Martin
jeanmartin@forthepeople.com
Francesca Kester
fkester@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 559-4908

Michael Hanna (P81462)
mhanna@forthepeople.com
**MORGAN & MORGAN**
2000 Town Center, Suite 1900
Southfield, MI 48075
Telephone: (313) 739-1950

William B. Federman
wbf@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560

A. Brooke Murphy
abm@murphylegalfirm.com
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H. Street NE, Ste. 302
Washington, D.C. 20002

Tel: (202) 470-3520
nmiglaccio@classlawdc.com
jrathod@classlawdc.com

*Attorneys for Plaintiffs and Putative Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

Christine Thomsen, Donna Miller, Shelbi Farrington, Dianna Kometh, Sally Labree, Harry Peterson, Patrick Burnham, David Teverbaugh, Richard Journagin, Gale Marie Jackson, Edward Cable, Carole Dangelo, Sophia Marks, Albert Shearer, and Rebecca Younk, on behalf of themselves and all others similarly situated,

                Plaintiffs,

   v.

Morley Companies, Inc.

                Defendant.

Case No. 1:22-cv-10271-TLL-PTM
Hon. Thomas L. Ludington
Hon. Patricia T. Morris

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

## STATEMENT OF ISSUES PRESENTED

1.　　Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes under Fed. R. Civ. P 23(b)(2) and (b)(3)?

**Plaintiffs' Answer: Yes.**

2.　　Should Bryan L. Bleichner of Chestnut Cambronne PA be appointed as Settlement Class Counsel?

**Plaintiffs' Answer: Yes.**

3.　　Should Plaintiffs be appointed as Class Representatives for the Settlement Class?

**Plaintiffs' Answer: Yes.**

4.　　Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed Settlement Class?

**Plaintiffs' Answer: Yes.**

5.　　Should Epiq Class Action & Claims Solutions, Inc. and/or its affiliate Hilsoft Notifications (together, "Epiq") be appointed as Claims Administrator?

**Plaintiffs' Answer: Yes.**

6.　　Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

**Plaintiffs' Answer: Yes.**

4872-1079-7872.1

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

- Fed. R. Civ. P. 23

- *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

- *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

- *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

4872-1079-7872.1

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................1

II.  STATEMENT OF FACTS ..................................................................................3

III. PROCEDURAL HISTORY..................................................................................4

IV. THE SETTLEMENT TERMS..............................................................................5

   A.   Proposed Settlement Class ..........................................................................5

   B.   The Settlement Fund ...................................................................................5

   C.   Remedial Measures and Security Enhancements..........................................8

   D.   Class Notice and Settlement Administration ...............................................8

   E.   Attorneys' Fees and Expenses....................................................................10

   F.   Service Awards to Named Plaintiffs...........................................................10

   G.   Release......................................................................................................11

V.  ARGUMENT......................................................................................................11

   A.   The Court Should Certify the Proposed Settlement Class ..........................11

      1.   Rule 23(a) Requirements Are Met for Settlement Purposes......................12

      2.   Rule 23(b) Requirements Are Met for Purposes of Settlement .................15

   B.   The Court Should Appoint Plaintiffs' Counsel as Class Counsel.....................17

   C.   The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate
        and Thus Warrants Preliminary Approval ...........................................................18

      1.   The Settlement Agreement Is the Result of Informed, Non-Collusive,
           Arm's Length Negotiations Between the Parties. ........................................19

      2.   The Complexity, Expense and Likely Duration of the Litigation Favors
           Approval of the Settlement.........................................................................20

      3.   The Parties Engaged in Sufficient Fact-Finding .........................................21

      4.   The Settlement Provides Favorable Relief When Weighed Against the
           Likelihood of Success on the Merits ...........................................................22

      5.   The Reaction of Absent Class Members Is Not Applicable..........................24

4872-1079-7872.1

6.      The Settlement Is in the Public's Interest......................................................24

D.   The Proposed Notice Plan Is the Best Practicable ...............................................25

VI. CONCLUSION .................................................................................................25

4872-1079-7872.1

# TABLE OF AUTHORITIES

Page(s)

## <u>Cases</u>

*Afro Am. Patrolmen's League v. Duck*,
    503 F.2d 294 (6th Cir. 1974) ..................................................................12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................... passim

*Beattie v. CenturyTel, Inc.*,
    511 F.3d 554 (6th Cir. 2007) ........................................................ 13, 15

*Berry v. Sch. Dist. of Benton Harbor*,
    184 F.R.D. 93 (W.D. Mich. 1998).........................................................11

*Bert v. AK Steel Corp.*,
    2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ....................................20

*Bittinger v. Tecumseh Prods. Co.*,
    123 F.3d 877 (6th Cir. 1997) ...............................................................14

*Calloway v. Caraco Pharm. Labs., Ltd.*,
    287 F.R.D. 402 (E.D. Mich. 2012) ......................................................16

*Daffin v. Ford Motor Co.*,
    458 F.3d 549 (6th Cir. 2006) ...............................................................12

*Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013)................................................................24

*Davidson v. Henkel*,
    302 F.R.D. 427 (E.D. Mich. 2014) ......................................................12

*Fox v. Iowa Health Sys.*,
    2021 WL 826741 (W.D. Wis. Mar. 4, 2021)........................................23

*Garner Props. & Mgmt., LLC v. City of Inkster*,
    2020 WL 4726938 (E.D. Mich. August 14, 2020) ........................ 10, 11

*Garner Props. & Mgmt., LLC v. City of Inkster*,
    333 F.R.D. 614 (E.D. Mich. Jan. 17, 2020)................................... 11, 14

4872-1079-7872.1

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ....................................23

*Hillson v. Kelly Servs. Inc.*,
  2017 WL 279814 (E.D. Mich. Jan. 23, 2017) .....................................................10

*Implement Workers of Am. v. Gen. Motors Corp.*,
  2008 WL 2968408 (E.D. Mich. July 31, 2008)....................................................22

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ..............................................................................14

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ......................................................................24

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ......................................................................20

*In re Packaged Ice Antitrust Litig.*,
  08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ..........................19

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  2017 U.S. Dist. LEXIS 75455 (D. Minn. May 17, 2017) ...................................24

*In re Telectronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ...............................................................27

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  2017 U.S. Dist. LEXIS 221736 (N.D. Ga. Sept. 22, 2017)................................24

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) .......................................................... 14, 19, 22, 23

*Kinder v. Northwestern Bank*,
  278 F.R.D. 176 (W.D. Mich. 2011)......................................................................12

*Kritzer v. Safelite Solutions, LLC*,
  2012 WL 1945144 (S.D. Ohio May 30, 2012)............................................. 21, 22

*Powers v. Hamilton County Pub. Defender Comm'n*,
  501 F.3d 592 (6th Cir. 2007) ..............................................................................16

*Robinson v. Shelby Cty. Bd. of Educ.*,
566 F.3d 642 (6th Cir. 2009) .................................................................18

*Sprague v. General Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) ......................................................... 13, 14

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
262 F.3d 559 (6th Cir. 2001) ................................................................18

*Thacker v. Chesapeake Appalachia, L.L.C.*,
259 F.R.D. 262 (E.D. Ky. 2009)...........................................................19

*Thacker v. Chesapeake Appalachia, L.L.C.*,
695 F.Supp.2d 521 (E.D. Ky. 2010)....................................................29

*Underwood v. Carpenters Pension Trust Fund-Detroit and Vicinity*,
2017 WL 655622 (E.D. Mich. February 17, 2017) ...................... 10, 11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................... passim

## Rules

Fed. R. Civ. P. 23 ......................................................................... passim

Fed. R. Civ. P. 23(a) .................................................................... passim

Fed. R. Civ. P. 23(a)(1)...................................................................12

Fed. R. Civ. P. 23(a)(2)...................................................................13

Fed. R. Civ. P. 23(a)(3)...................................................................13

Fed. R. Civ. P. 23(a)(4)...................................................................14

Fed. R. Civ. P. 23(b) ................................................................... passim

Fed. R. Civ. P. 23(b)(3)................................................................ passim

Fed. R. Civ. P. 23(c)(2)(B) ........................................................ 9, 25

Fed. R. Civ. P. 23(e).................................................................. 18, 25

4872-1079-7872.1

Fed. R. Civ. P. 23(g)(1)(A)(i-iv)..................................................................17

Fed. R. Civ. P. 23(g)(1)(B) .......................................................................17

Federal Rule of Evidence 408.....................................................................5

**Other Authorities**

H.B. Newberg, NEWBERG ON CLASS ACTIONS, § 11.25 ................................... 18, 19

H.B. Newberg, NEWBERG ON CLASS ACTIONS, § 11.53 ..........................................25

MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995)....................................19

MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004)......................... 12, 19

## I.    INTRODUCTION

This case arises from a Data Incident[1] (the "Data Incident") experienced by Defendant Morley Companies, Inc. ("Morley") on or about August 1, 2021 involving the potential unauthorized access of Personally Identifiable Information ("PII") of certain individuals. *See* Declaration of Bryan L. Bleichner in support of Plaintiffs' Unopposed Motion for Preliminary Approval ("Bleichner Decl."), ¶ 2 attached as **Ex. 2**. Counsel for all Plaintiffs have worked collaboratively, joining in this action via the filing of later complaints, including via the operative one, the Second Amended Class Action Complaint ("SAC"), filed on May 26, 2022. ECF No. 16. Defendant suffered a massive ransomware-type malware attack on or about August 1, 2021. SAC, ¶1. An unauthorized user targeted Defendant, launching a ransomware-type malware on Defendant's network and computer systems that potentially resulted in unauthorized access to personal information—described in detail below in § II *infra*—of approximately 694,679 individuals, including current and former employees. Bleichner Decl., ¶ 11.

From the start, the Parties met and conferred and worked towards possible early resolution of this dispute. The Parties participated in a mediation on April 20, 2022 with a neutral, Bennett G. Picker, Esq. of Stradley Ronon. Bleichner Decl., ¶

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement and Release dated August 24, 2022.

9. The Parties reached a resolution that – if accepted – will resolve the litigation and provide substantive relief to the Settlement Class Members ("SCMs"). Bleichner Decl., ¶ 13. The Parties have negotiated a settlement providing for a $4,300,000 non-revisionary Settlement Fund to be used as the exclusive source of payment to SCMs, for costs of Claims Administration and Notice, and for any Attorneys' Fees and Expenses Award and any Class Representative service awards ("Settlement Agreement" or "S.A."). *See* S.A., § 1.29.

SCMs stand to benefit from the Settlement in many ways. SCMs who submit valid, timely claims may claim up to $2,500 in out-of-pocket expenses, described in § IV *infra*. *See* S.A., § 2-2, 2.3(e).[2] Any residual funds after payment of all class benefits, settlement administration fees, attorneys' fees and costs, and service awards shall be used to extend the credit monitoring terms for those who made claims. S.A., § 2.5. And, any additional remainder shall be used for a *pro rata* increase of the lost time claims, up to a maximum of $160 per claimant. *Id*.

The results achieved by the Settlement—which compare favorably to settlements that have received final approval by courts in this and other districts—demonstrate the propriety of granting preliminary approval. As such, Plaintiffs respectfully move this Court for an Order: (1) granting preliminary approval to the

---

[2] A subclass, California SCMs, may also claim a payment of $75 per individual as compensation for their statutory claim(s) under California law. S.A., § 2.3(c).

Settlement Agreement; (2) certifying the Settlement Class; (3) appointing Plaintiffs as Settlement Class Representatives (the "Class Representatives"); (4) appointing Bryan L. Bleichner of Chestnut Cambronne PA as Settlement Counsel; (5) Appointing Epiq as Claims Administrator; and (6) ordering that Notice be disseminated to the Settlement Class in accordance with the Settlement Agreement.

## II.    STATEMENT OF FACTS

Defendant Morley is a Michigan corporation that provides business services to clients, including the information processing for health plan clients. SAC, ¶ 32.

Plaintiffs allege that, starting in July 2021, and, first observed by Defendant on August 1, 2021, cybercriminals stole the sensitive personal information of Plaintiffs and Class Members from Defendant Morley's computer servers. *Id*., ¶1. On August 1, 2021, Defendant discovered that "a ransomware-type malware had prevented access to some data files on [Defendant's] system beginning August 1, 2021, and there was unauthorized access to some files that contained personal information." *Id*., ¶ 1. This Data Incident involved approximately 694,679 individuals, including current and former employees of Defendant as well as various business clients. S.A. at p.3. The information allegedly stolen in the Data Incident included Class Members' sensitive PII including, but not limited to: Social Security numbers ("SSNs"), names, addresses, dates of birth ("DOBs"), driver's license numbers, client identification numbers, medical diagnostic and treatment

information, and health insurance information. *Id*. at 2-3.

Plaintiffs further allege that all of this PII and PHI was compromised due to Defendant's negligent and/or careless acts and omissions and its failures to protect its employees', former employees', and customers' data. SAC, ¶¶ 266-80.

Plaintiffs allege that they and similarly situated customers have suffered injury as a result of Defendant's conduct, including: (i) lost or diminished value of their PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Incident, including but not limited to lost time; and (iv) the continued risk to their PII, which Plaintiffs allege (a) may remain available on the dark web for individuals to access and abuse, and (b) remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI. *See, e.g.*, *id.*, ¶ 279.

## III.   PROCEDURAL HISTORY

Plaintiff Thomsen initiated this action against Morley by filing a class action complaint on February 10, 2022. *See* Compl., ECF No. 1. Subsequently, other similar suits were filed, and, after coordination, the plaintiffs there voluntarily dismissed their respective complaints without prejudice, and all are now added as

4872-1079-7872.1

named Plaintiffs here.[3] *See* ECF No. 17, PageID.778-79; Bleichner Decl., ¶ 5; SAC. The Parties agreed to mediation and, prior to the mediation, exchanged discovery under F.R.E. 408, which included details of the Data Incident and the class allegations. Bleichner Decl., ¶¶ 10-12. The April 20, 2022 mediation with Mr. Picker led to a settlement in principle, and, shortly thereafter, the Parties reduced it to a Settlement Term Sheet. *See* **Ex. 1**; *Id.*, ¶ 13. Since then, the Parties have negotiated the details of the Settlement Agreement and its exhibits, and executed the Settlement Agreement on August 24, 2022. *Id.*

## IV.    THE SETTLEMENT TERMS

### A.    Proposed Settlement Class

The Settlement will provide substantial relief for the following Settlement Class: "[A]ll natural persons residing in the United States who were sent notice letters notifying them that their Private Information was compromised in the Data Incident announced by Defendant on or about August 1, 2021." S.A., § 1.26. The Settlement Class contains approximately 694,679 individuals. *Id.* at 3.

### B.    The Settlement Fund

---

[3] Counsel conferred with plaintiffs' counsel in similar suits, and it was agreed that those cases would be voluntarily dismissed and then added to this case to work together towards settlement. Bleichner Decl., ¶ 15. *See Miller*, No. 1:22-cv-10284; *Kometh*, No. 1:22-cv-10311; *Teverbaugh*, No. 1:22-cv-10321; *Journagin*, No. 1:22-cv-10443; *Jackson*, No. 2:22-cv-10469.   (notices of voluntary dismissal filed Mar. 16, 2022, Mar. 14, 2022, Mar. 17, 2022, Mar. 16, 2022, Mar. 23, 2022, respectively). In *Ratcliff v. Morley Companies, Inc.*, Case No. 1:22-cv-10360, counsel there chose not to coordinate with Plaintiffs, and it is stayed pending this case's resolution.

4872-1079-7872.1

Morley has agreed to create a non-reversionary Settlement Fund in the amount of $4,300,000, which will be used to make payments to SCMs and to pay the costs of Claims Administration, any Attorneys' Fees and Expenses Award, and any Class Representative service awards. S.A., §§ 1.28, 2.1.

***Compensation for Unreimbursed Losses.*** SCMs may submit a claim for out-of-pocket losses, up to a total of $2,500. Out-of-pocket claims include unreimbursed losses relating to fraud or identity theft; professional fees and fees for credit repair services; costs associated with freezing of credit with any credit reporting agency; credit monitoring costs that were incurred on or after August 1, 2021 through the date of claim submission that the claimant attests under penalty of perjury were caused or otherwise incurred as a result of the Data Incident; and miscellaneous expenses. S.A., § 2.3(a). SCMs with out-of-pocket expense claims must submit supporting documentation. This may include receipts or other documentation of costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation. *Id*.

SCMs can also submit a Claim Form for time spent remedying issues related to the Data Incident for up to four (4) total hours at a rate of $20 per hour ("Lost-Time Claims"). S.A., § 2.3(b). No documentation is required but SCMs must (1) attest that the time claimed was actually spent as a result of the Data Incident and

6

(2) provide a brief description of the actions taken in response to the Data Incident. *Id*. These Claims can be combined with claims for out-of-pocket expenses. *Id*.

*Credit Monitoring.* All SCMs are entitled to receive 3 years of free 3-Bureau Credit Monitoring. The Parties will mutually agree on a Credit Monitoring vendor and coverage will include a minimum of the following: (1) financial fraud coverage; (2) identity freezing at the main credit bureaus; (3) home and property title monitoring; (4) income tax protection; (5) Early Warning Services to monitor financial accounts; and (6) identity theft insurance of up to $1,000,000. S.A., § 2.2. The costs for such services will be paid out of the Settlement Fund. *Id*. SCMs who previously signed up for the Credit Monitoring offered by Defendant will have the terms of their service automatically extended by 3 years.

*Password Managing Service.* SCMs who submit valid and timely claims for Password Managing Services shall also be provided the opportunity to enroll in one-year of Kroll's "Dashlane" password protections services. S.A., § 2.3(e). The costs for such services will be paid out of the Settlement Fund. *Id*.

*California Statutory Damages Payment.* SCMs who attest, under penalty of perjury, that they were California residents at the time of the Data Incident (*i.e.*, on August 1, 2021) may submit a claim for cash payment of $75 as compensation for their statutory claim(s) under California law. S.A., § 2.3(c). This claim for cash payment does not require any documentation. *Id*. This additional amount can be

7

combined with either or both Out-Of-Pocket Expense Claims or Lost-Time Claims.

***Residual Funds.*** Any residual funds after payment of all above-described class benefits, settlement administration fees, attorneys' fees and expenses of litigation, and any service awards to the Representative Plaintiffs shall be used to extend the credit monitoring terms for all those who make a valid claim for the service, up to the maximum term that the residual funds will allow on a class-wide basis. S.A., § 2.5. Any additional remainder shall be used for a *pro rata* increase of the Lost-Time Claims, up to a maximum of $160 per claimant. *Id*.

## C.  Remedial Measures and Security Enhancements

Defendant has provided a confidential declaration identifying the remedial measures and data security enhancements it has implemented to date, attached hereto as **Ex. 3** and filed under seal (ECF No. 23, PageID.1231, granting order) to preserve the confidential nature of those remedial measures and enhancements. S.A., § 2.6. These changes will benefit those SCMs whose information remains in Morley's possession, and also other employees, former employees, future employees, and customers, by protecting their PII and PHI from unauthorized access.

## D.  Class Notice and Settlement Administration

The Parties have selected as Claims/Settlement Administrator Epiq, a company experienced in administering class action claims—and specifically those of the type provided for and made in data breach litigation. S.A., § 1.4; *see also*

8

Declaration of Cameron R. Azari on Notices and Notice Plan, attached as **Ex. 4**.

Notice will begin within 30 days after entry of a Preliminary Approval Order. S.A., §1.15. Within 14 days of Preliminary Approval, Epiq will be provided with the Class List, the names and last known address of each SCM. *Id.*, §3.2 (a). Using the list, Epiq will run the postal addresses of SCMs through the USPS Change of Address database to update any change of address on file. *Id.*, §3.2(d).

The "Short Notice" (*see Id.*, § 1.31) will then be mailed to SCMs. If returned to Epiq with a forwarding address, Epiq will re-send it to that address within 7 days. *Id.* If it is returned to Epiq at least 14 days prior to the Opt-Out Date and Objection Date, and there is no new forwarding address, Epiq will perform a standard skip trace in an effort to ascertain the current address of the SCM and, if an address is ascertained, Epiq will re-send the Short Notice within 7 days. *Id.*

Epiq also will establish and maintain a Settlement Website that will host a traditional "Long Form" notice. *Id.*, § 3.2(c), § 1.14. The Notices will refer SCMs to this Website at which SCMs will be able to learn about the Settlement Agreement, their rights in relation to it and procedures for exercising their rights to it. *Id.* SCMs will also be able to use the Website to download claim forms for mailing and for submitting electronically. *Id.* The Notices will be clear and concise and directly apprise SCMs of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B). Epiq shall provide the

9

requested relief to all SCMs that made a valid claim, subject to the individual caps on settlement class payments, within sixty (60) days of the Effective Date or within thirty (30) days of the date the claim is approved, whichever is later. S.A., § 9.2.

## E.   Attorneys' Fees and Expenses

Plaintiffs will also separately seek an award of attorneys' fees not to exceed 33% of the Settlement Fund (*i.e.*, $1,419,000), and reimbursement of reasonable costs and litigation expenses incurred, which shall be paid from the Settlement Fund. S.A., §7.2. Class Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size. *See, e.g.*, *Garner Properties & Mgmt. v. City of Inkster*, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (holding an attorneys' fee request of 33% of settlement fund to be reasonable); *Hillson v. Kelly Servs.*, 2017 WL 279814, at *9 (E.D. Mich. Jan. 23, 2017) (finding fee request of 33% of the fund "in the ballpark of a reasonable award").

## F.   Service Awards to Named Plaintiffs

Plaintiffs in this case have been vital in litigating this matter, and have been personally involved in the case and support the Settlement. Bleichner Decl., ¶ 26. Plaintiffs will separately petition for awards of $1,500 each, recognizing their time, effort, and expense incurred pursuing claims that benefited all SCMs. S.A., § 7.3.

The amount requested here is reasonable and common in settled class actions. *See, e.g.*, *Underwood v. Carpenters Pension Tr. Fund-Detroit & Vicinity*, 2017 WL

10

655622, at *15 (E.D. Mich. Feb. 17, 2017) (approving $5,000 service award); *Garner*, 2020 WL 4726938 at *12 (approving $1,000 service award).

### G.    Release

Plaintiffs and the Settlement Class, upon entry of Final Approval Order, will be deemed to have "completely and unconditionally released, forever discharged and acquitted the Released Persons from any and all of the Released Claims, including Unknown Claims." S.A. §6.2; *Id.* §1.22 Released Claims definition.

## V.    ARGUMENT

A settlement agreement should be preliminarily approved if it (1) "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys," and (2) "appears to fall within the range of possible approval." *Garner*, 333 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020)[4]; *see also Berry v. Sch. Dist. of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (finding that a court must preliminarily approve a class settlement "[u]nless it appears that the compromise embodied in the agreement is illegal or tainted with collusion"). And "it is clear the bar is lower for preliminary approval than it is for final approval." *Garner*, 333 F.R.D. 614, 621 (E.D. Mich. Jan. 17, 2020).

### A.    The Court Should Certify the Proposed Settlement Class

---

[4] Unless otherwise noted, all citations and internal quotations are omitted.

The first step for a court faced with a motion for preliminary approval is to certify the proposed settlement class for settlement purposes as meeting the requirements of rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004). The plaintiff must demonstrate that the proposed class and proposed class representatives meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Rule 23(a)(1)-(4). Each of these requirements is met here.

### 1. Rule 23(a) Requirements Are Met for Settlement Purposes

*Numerosity and Ascertainability.* The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). As few as thirty-five class members is sufficient. *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974); *Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (noting the modern trend requires a minimum of 21 to 40 class members); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). The Settlement Class includes approximately 694,679 individuals identified by Morley—satisfying the numerosity requirement for purposes of settlement. *See* Fed. R. Civ. P. 23(a)(1). The Class is ascertainable as well. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) ("[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively

12

feasible for the court to determine whether a particular individual is a member."). Identifying SCMs is objective: Morley has a list of all individuals to whom it sent notice that their information may have been exposed in the Data Incident.

*Commonality.* Next, there must be "questions of law or fact common to the class." Rule 23(a)(2). Commonality may be shown when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2545, 2557 (2011). The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2545. Here, Plaintiffs' claims turn on the adequacy of Morley's data security in protecting SCMs' PII. Evidence to resolve that claim does not vary among class members, and so can be fairly resolved, at least for purposes of settlement, for all SCMs at once.

*Typicality.* Class Representatives' claims must be typical of the putative class they seek to represent. Rule 23(a)(3). Plaintiffs satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Typicality is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court

13

may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The representative's claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). "In determining whether the requisite typicality exists, a court must inquire whether the interests of the named plaintiff are 'aligned with those of the represented group,' such that 'in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Garner*, 333 F.R.D. at 623 (quoting *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1082 (6th Cir. 1996)). Plaintiffs allege that each individual who received a letter that their PII may have had their PII compromised as a result of the Data Incident, and were thus impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class.

***Adequacy.*** Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel…which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007). Class Representatives here have no conflicts with the Settlement Class, have participated actively in the case,

and are represented by attorneys experienced in class action litigation, including data breach cases. Collectively, Plaintiffs' Counsel have vast experience as vigorous class action litigators and as data breach litigators in particular, and are well suited to advocate on behalf of the Class. *See* Bleichner Decl. ¶¶ 27-28.

### 2. Rule 23(b) Requirements Are Met for Purposes of Settlement

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for the Court to certify the proposed class. *Dukes*, 131 S.Ct. at 2548. Under Rule 23(b)(3), a class action may be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3). "A plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof.'" *Beattie*, 511 F.3d at 564. The superiority requirement of Rule 23(b)(3) considers "the difficulties likely to be encountered in the management of a class action" and whether individual litigation would yield small recoveries. *Id.*; *see also Amchem*, 521 U.S. at 617 ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

4872-1079-7872.1

### a)   Common Questions of Law and Fact Predominate

Predominance focuses on whether the class is sufficiently cohesive to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. Predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Defendant's alleged course of conduct was uniform over the entire Class here. This presents multiple questions of law and fact that are central to liability and thus predominate over any issues affecting individual class members. And since class-wide determination of this issue will be the same for all, determining whether any class member has a right of recovery, the predominance requirement is readily satisfied.

### b)   A Class Action Is the Superior Method of Adjudication

Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims here. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd*., 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Such is especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem,* 521 U.S. at 617. Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert

4872-1079-7872.1

testimony and document review too costly. The individual amounts here are insufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Rather, individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.[5] Thus, the Court should certify the Class pursuant to Rule 23(b)(3).

## B.   The Court Should Appoint Plaintiffs' Counsel as Class Counsel

The next step when deciding whether to preliminarily approve a settlement is to appoint Class Counsel. Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Rule 23(g)(1)(B). In making this determination, courts generally consider the following factors: (1) proposed class counsel's work in identifying or investigating potential claims; (2) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) proposed counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Rule 23(g)(1)(A)(i-iv).

Proposed Settlement Class Counsel has extensive experience in prosecuting data breach class actions and other complex cases. Bleichner Decl., ¶¶ 27-28.

---

[5] Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved—and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

Further, proposed Class Counsel ("Class Counsel") have diligently investigated and prosecuted *this* case by dedicating substantial resources to it and successfully negotiating this Settlement. *See* SAC; S.A. at 2-4. Thus, the Court should appoint Bryan L. Bleichner of Chestnut Cambronne PA as Settlement Class Counsel.

### C.    The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate and Thus Warrants Preliminary Approval

Following certification of the Settlement Class, the Court may approve the settlement only "on finding that it is fair, reasonable, and adequate." Rule 23(e); *see also* A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS, § 11.25, 3839 (4th ed. 2002). This process includes three steps: "(1) the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001). Judicial policy favors voluntary conciliation and settlement of complex class actions. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008-09 (S.D. Ohio 2001). Approval of a class settlement is discretionary, and a Court's decision will only be upended upon a showing of an abuse of discretion. *Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 647 (6th Cir. 2009).

First, the preliminary hearing's purpose is often described as to determine if the proposed settlement is "within the range of possible approval." NEWBERG, §

11.25, at 3839 (quoting MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995));

*see also In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich.

Aug. 2, 2010). The Court must "ensur[e] that the proposed settlement is not illegal

or collusive" based upon the "issues and evidence, as well as the arms-length nature

of the negotiations prior to the proposed settlement." *Thacker v. Chesapeake

Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009). Preliminary approval

requires only an "initial evaluation" of the fairness of the settlement made on the

basis of written submissions and informal presentations from the settling parties.

MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004).

In analyzing whether a settlement agreement is fair, reasonable, and adequate,

courts typically look ahead to the Sixth Circuit's non-exhaustive factors for final

approval: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely

duration of the litigation; (3) the amount of discovery engaged in by the parties; (4)

the likelihood of success on the merits; (5) the opinions of class counsel and class

representatives; (6) the reaction of absent class members; and (7) the public interest."

*Int'l Union*, 497 F.3d at 631. The Settlement Agreement meets each consideration.

### 1.    The Settlement Agreement Is the Result of Informed, Non-Collusive, Arm's Length Negotiations Between the Parties.

The first factor weighs in favor of granting preliminary approval. "Courts

presume the absence of fraud or collusion in class action settlements unless there is

evidence to the contrary." *Thacker*, 695 F.Supp.2d 521, 531 (E.D. Ky. 2010).

Negotiations overseen by a neutral mediator are given extra weight. *See Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"). This case was settled through the persistent help and oversight of a respected mediator; Mr. Picker has substantial experience mediating and resolving complex class actions, including data breach class action settlements. Mr. Picker's active involvement ensured that the negotiations proceeded at arm's length. And, through the mediation process, Plaintiffs' Counsel obtained information about the size of the putative class, learning that it is substantially larger than first reported, and that was initially plead in the various complaints. Compare Complaint ¶ 1 (class size of 521,046) with S.A. (class size of approximately 694,679).

### 2. The Complexity, Expense and Likely Duration of the Litigation Favors Approval of the Settlement.

The second factor, complexity and likely duration case, supports approval. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement"). "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated." *Id.* This case could drag on for years. Pre-trial litigation would be extensive, with voluminous discovery needed from Morley

20

and any third-party companies that Morley has used in an information technology capacity. Experts would be required to testify regarding Morley's data security practices, industry standard practices, and how its practices deviated therefrom. Substantial fact-finding would be required into what information was taken, how, and what impact this had and will have on the Settlement Class. Plaintiffs would need to survive potential dispositive motions and prevail on a motion for class certification. Such motion practice, and potential appeals, could consume years, during which the law could change and threaten the claims. Given the complexity of the claims and arguments here, a lengthy trial would follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery, if any at all. Thus, the anticipated potential litigation here favors approval.

### 3.    The Parties Engaged in Sufficient Fact-Finding

The Court next asks whether the plaintiff has enough information to "adequately assess their case and the desirability of the proposed settlement" at this stage of the proceedings. *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Id.*

Here, although the Parties reached a proposed settlement early on, Class Counsel made an informed decision regarding the appropriateness of settlement.

Prior to mediation, Plaintiffs served and received informal discovery pertaining to: cyber-forensic reports, internal investigations, correspondence with government regulatory agencies, the number and type of persons affected, security measures taken post-Data Incident, the types of PII and PHI that were potentially compromised, and the amount of insurance coverage. Bleichner Decl., ¶¶ 10-11. Class Counsel thoroughly evaluated this in their analysis of damages. *Id*. Through the above process and the mediation, Class Counsel came to understand the size of the Settlement Class, the issues at hand, and obtain an excellent settlement for class members. *Id*. at ¶ 12.; *see also Int'l Union*, 2008 WL 2968408, at \*26 (E.D. Mich. July 31, 2008) (noting the use of informal discovery as an adequate tool for class counsel to make an informed decision). Combined with their experience, Class Counsel had all the information needed to "adequately assess the[] case and the desirability of the proposed settlement." *See Kritzer*, 2012 WL 1945144, at \*7. Thus, the Court should find that Class Counsel conducted sufficient fact-finding.

### 4. The Settlement Provides Favorable Relief When Weighed Against the Likelihood of Success on the Merits

To "judge the fairness of a proposed compromise," a court "weigh[s] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union*, 497 F.3d at 631. While Plaintiffs are confident in their claims, there is risk here, as is true in all complex class actions.

And this area of law is especially risky. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of implicating data far more sensitive have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) (finding that the factual allegations in the complaints were insufficient to establish standing), *reversed in par*t, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing). As another court recently observed in finally approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex"). *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. Thus, given this risk and uncertainty, settlement is the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. *See, e.g.*, *In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

23

In light of the above, the $4,300,000 Settlement Fund for the Settlement Class in this case is a good result. The Settlement approximates to a payment of $6.19 per SCM. Bleichner Decl., ¶ 14. Based on Class Counsel's experience in similar cases—including with claims rates—the Settlement Fund  detailed in § IVB and the expansive injunctive relief provides ample compensation for SCMs' legitimate individual claims and for class-wide claims in the aggregate. S.A., § 2.2.

The Settlement value per class member here is on par with or exceeds that in other exemplary data breach settlements. *See In re The Home Depot, Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) (approximately $0.51 per class member); *In re Target Customer Data Sec. Breach Litig.*, No. MDL 14-2522, (D. Minn. Mar. 18, 2015) ($0.17 per class member). The above underscore Plaintiffs' exemplary resolution for the Settlement Class.

### 5.    The Reaction of Absent Class Members Is Not Applicable

This cannot be discerned because notice has not yet been given to the Class.

### 6.    The Settlement Is in the Public's Interest

Finally, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously different and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The settlement of a class action affecting approximately 694,679 people is consistent with the public interest, as it conserves judicial resources and ensures uniformity. The Settlement thus falls

24

within the range of final approval under each of the Sixth Circuit's factors, and notice should be issued to the Class.

### D.    The Proposed Notice Plan Is the Best Practicable

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances…who can be identified through reasonable effort." Rule 23(c)(2)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Rule 23(e)(1). Notice is "adequate if it may be understood by the average class member." NEWBERG, § 11:53 at 167. As shown by the proposed notices and Epiq's Declaration, the Notice plan developed by both Parties satisfies the requisite criteria. *See also* § IVD here.

## VI.    CONCLUSION

Based on the above, Plaintiffs respectfully request the Court certify the class, appoint Plaintiffs as Class Representatives, appoint Bryan L. Bleichner as Settlement Class Counsel, grant preliminary Settlement approval, approve the form and manner of the notice as described, and schedule a Final Fairness hearing.

<div style="text-align:right">Respectfully Submitted:</div>

September 5, 2022

**THE MILLER LAW FIRM, P.C.**
By: */s/ Sharon S. Almonrode*
Sharon S. Almonrode (P33938)
ssa@millerlawpc.com
950 West University Drive
Rochester, MI 48307
Telephone: (248) 841-2200

4872-1079-7872.1

E. Powell Miller (P39487)
epm@millerlawpc.com

Bryan L. Bleichner
bbleichner@chestnutcambronne.com
Jeffrey D. Bores
jbores@chestnutcambronne.com
Christopher P. Renz
crenz@chestnutcambronne.com
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South
Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300

Nathan D. Prosser
nprosser@hjlawfirm.com
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005

Gary M. Klinger
gklinger@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (202) 429-2290

David K. Lietz
dlietz@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5101 Wisconsin Ave. NW, Suite 305
Washington, D.C. 20016
Telephone: (202) 429-2290

Rachele R. Byrd

4872-1079-7872.1

byrd@whafh.com
Oana Constantin
constantin@whafh.com
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599

M. Anderson Berry
aberry@justice4you.com
Gregory Haroutunian
gharoutunian@justice4you.com
**CLAYEO C. ARNOLD,
PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778

Charles R. Ash, IV (P73877)
crash@nationalwagelaw.com
**NATIONAL WAGE AND HOUR
LAW, ASH PLLC**
402 W. Liberty St.
Ann Arbor, MI 48103-4388
Telephone: (734) 234-5583

Terence R. Coates
tcoates@msdlegal.com
**MARKOVITS, STOCK &
DEMARCO, LLC**
119 E. Court St., Ste. 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700

Joseph M. Lyon
jlyon@thelyonfirm.com
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208

27

Telephone: (513) 381-2333

Jean S. Martin
jeanmartin@forthepeople.com
Francesca Kester
fkester@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 559-4908

Michael Hanna (P81462)
mhanna@forthepeople.com
**MORGAN & MORGAN**
2000 Town Center, Suite 1900
Southfield, MI 48075
Telephone: (313) 739-1950

William B. Federman
wbf@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560

A. Brooke Murphy
abm@murphylegalfirm.com
**MURPHY LAW FIRM**
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
Telephone: (405) 389-4989

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H. Street NE, Ste. 302
Washington, D.C. 20002
Tel: (202) 470-3520
nmiglaccio@classlawdc.com

28

jrathod@classlawdc.com

*Attorneys for Plaintiffs and Putative Class*

29

## <u>CERTIFICATE OF SERVICE</u>

I, Sharon S. Almonrode, an attorney, hereby certify that on September 5, 2022,

I served the above and foregoing on all counsel of record by filing it electronically

with the Clerk of the Court using the CM/ECF filing system.

<div style="margin-left:40%">

*/s/ Sharon S. Almonrode*
Sharon S. Almonrode
ssa@millerlawpc.com
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste 300
Rochester, MI 48307
Tel: 248.841.2200

</div>